# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shenzhen Mammotion Innovation Co., Ltd. | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| FutureGen Technologies Inc. | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Shenzhen Mammotion Innovation Co., Ltd. ("Mammotion"), by and through its undersigned counsels, brings this action against Defendant FutureGen Technologies Inc. ("FutureGen") for declaratory judgment that three U.S. patents purportedly owned by FutureGen and identified more specifically in paragraphs 15-20 below ("the Asserted FutureGen Patents") are invalid and/or not infringed by the manufacture, use, sale, offer for sale or importation of Mammotion's products, and in support thereof alleges the following:

## NATURE OF THE ACTION

1.      This action arises under the patent laws of the United States of America, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Mammotion requests this relief because Defendant FutureGen claims that the "Mammotion" store on the Amazon marketplace infringes United States Patent Nos. 10,485,164 (the "'164 Patent"), 8,706,297 (the "'297 Patent"), and 8,428,776 (the "'776 Patent") (collectively, the "Asserted FutureGen Patents") by making, using, selling, offering for sale, and/or importing the following products: Mammotion YUKA 2000 Robot Lawn Mower (identified by ASIN No. B0DT6CBLJW, "YUKA 2000"), Mammotion LUBA Mimi AWD 800H Robot Lawn Mower

1

(identified by ASIN No. B0DWS1Q9KP, "LUBA Mimi AWD"), Mammotion YUKA Mini

500H Robotic Lawn Mower (identified by ASIN No. B0DWMCJ81J, "YUKA Mini")

(collectively, "Mammotion Accused Products"). *See* Exhibit 1 (Amazon complaints submitted

by FutureGen, alleging the Mammotion Accused Products sold on Amazon have infringed

the '164 Patent, the '297 Patent, and the '776 Patent). FutureGen's Amazon complaints have

harmed Mammotion's reputation of these accused products, giving rise to a substantial and

justiciable controversy between the parties that Mammotion seeks to resolve through this action.

2.    Additionally, FutureGen has retained attorneys at Ropes & Gray LLP in

Washington, D.C., as FutureGen's agents to engage in communications with Mammotion

regarding the alleged infringement and potential licensing arrangements. FutureGen's actions

have cast a substantial cloud over Mammotion's continued invention, design, manufacture, and

sale of the Mammotion Accused Products. As a result, Mammotion is under reasonable

apprehension of suit by FutureGen.

## THE PARTIES

3.    Plaintiff Mammotion is a company organized and existing under the laws of the

People's Republic of China with its principal place of business at 9th Floor, Building A3,

Zhiyuan, No. 1001 Xueyuan Avenue, Changyuan Community, Tao Yuan Street, Nanshan

District, Shenzhen, China.

4.    Mammotion is responsible for the invention, design, and manufacture of lawn

mower robots sold under the "Mammotion" brand on Amazon.com, including but not limited

to YUKA MINI 500, YUKA MINI 600, YUKA MINI 700, YUKA MINI 800, YUKA MINI

500H, YUKA MINI 600H, YUKA MINI 700H, YUKA MINI 800H, YUKA 1000, YUKA 2000,

YUKA 3000, LUBA MINI AWD 800, LUBA MINI AWD 800H, LUBA MINI AWD 1500,

LUBA MINI AWD 1500H, LUBA 2 AWD 3000X, LUBA 2 AWD 3000HX, LUBA 2 AWD

5000X, LUBA 2 AWD 5000HX, LUBA 2 AWD 10000X, LUBA 2 AWD 10000HX

(collectively, the "Mammotion Products").

5.      On information and belief, Defendant FutureGen is a Delaware corporation with headquarters at 20256 Hacienda Ct, Boca Raton, Florida 33498, United States. *See* Exhibit 2 at p. 2; Exhibit 3. Upon information and belief, Michael Letsky serves as the Chief Executive Officer of FutureGen and resides or conducts business at the same address. *See id*.

6.      On information and belief, FutureGen is the owner of all rights, title, and interest in the Asserted FutureGen Patents at the United States Patent and Trademark Office.

7.      Upon information and belief, FutureGen's primary business activity is the enforcement and attempted monetization of its patents. *See* Exhibit 2, at p. 18. Furthermore, based on information and belief, FutureGen reported $0 in revenue for the fiscal year 2020, and total sales of SmartMow—the product purportedly covered by the Asserted FutureGen Patents—amounted to only approximately $4,000 through 2021. *See id.*, at pp. 15–16. Additionally, upon information and belief, Michael Letsky, FutureGen's CEO, has focused primarily on patent enforcement. In a social media post on X (formerly Twitter) dated April 15, 2022, Michael Letsky stated: "So many patent infringers we have, look like a target rich environment." *See* Exhibit 4.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 1 *et seq*., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) exists with respect to the Fourth Cause of Action because the Plaintiff is a foreign company (i.e., a citizen of a foreign state) while the Defendant is, upon information and belief, a citizen of the State of Delaware and the amount in controversy is greater than $75,000 exclusive of interest and costs. Supplemental jurisdiction exists over the Fourth Cause of Action pursuant to 28 U.S.C. §

1367(a) because it is so related to the claims within the Court's original jurisdiction.

9.      This Court has personal jurisdiction over Defendant FutureGen under the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), because FutureGen has purposefully transacted business in the District of Columbia in connection with its efforts to enforce and monetize U.S. patent rights. These activities include, without limitation, sending patent enforcement and licensing communications to Mammotion, and engaging in negotiations—directly or through its agents—for the purpose of securing patent licenses or asserting claims of infringement. These contacts constitute purposeful availment of the District's legal and commercial forum and give rise to the claims asserted in this action. *See* D.C. Code § 13-423(a)(1) ("A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's — (1) transacting any business in the District of Columbia…").

10.      For example, FutureGen has conducted at least the following in pursuit of its business of the enforcement, and attempted monetization of patents in the District of Columbia:

a)      FutureGen retained attorneys at the law firm of Ropes & Gray LLP in Washington, D.C., as FutureGen's agents for attempting to enforce FutureGen's patents, including the '164 Patent, the '297 Patent, and the '776 Patent. FutureGen contracted with its attorneys to perform acts in furtherance of FutureGen's business interests in Washington, D.C.

b)      FutureGen, through its attorneys at the Washington, D.C. office of Ropes & Gray LLP, initiated licensing negotiations with Mammotion regarding the Asserted FutureGen Patents and entered into a Non-Disclosure Agreement with Mammotion in connection with those negotiations.

c)      FutureGen used its attorneys at Ropes & Gray LLP in Washington, D.C. to advise, consult, and/or negotiate on FutureGen's behalf regarding the amount and terms of license fees or settlement demands.

d)    FutureGen used its attorneys at Ropes & Gray LLP's Washington, D.C. office to prepare claim charts alleging infringement of the Asserted FutureGen Patents by Mammotion Accused Products and to respond to non-infringement contentions provided by Mammotion.

e)    FutureGen also used its attorneys at the Washington, D.C. office of Ropes & Gray LLP to receive and analyze physical samples of Mammotion Accused Products, which Mammotion voluntarily provided for the purpose of evaluating the applicability of the asserted infringement claims. The delivery address designated by FutureGen for receipt of the product samples was the Ropes & Gray LLP office in Washington, D.C.

11.    FutureGen has purposefully directed its business activities into the District of Columbia through its engagement of attorneys located in Washington, D.C. to advance its patent enforcement and monetization strategies. These contacts are not limited to isolated legal representation but aggregate to substantive, ongoing business communications and transactional efforts conducted through its D.C.-based counsel. FutureGen retains and exercises control over its attorneys at the Washington, D.C. office of Ropes & Gray LLP in connection with the enforcement of its patent portfolio, including the Asserted FutureGen Patents. Such purposeful availment of legal and business infrastructure within the District constitutes transacting business under D.C. Code § 13-423(a)(1).

12.    By intentionally retaining attorneys in Washington, D.C. to carry out key aspects of its patent enforcement and monetization efforts, FutureGen affirmatively directed business activities toward the District. FutureGen thus purposefully availed itself of the privilege of conducting business in the District of Columbia.

13.    The District of Columbia's long-arm statute is interpreted broadly and extends to the full limits of the Due Process Clause of the Constitution. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). By engaging in business activities within the District, either

directly or through its retained agents for the purpose of transacting FutureGen's business, FutureGen has purposefully availed itself of the District of Columbia to assert the patent rights at issue in this case. Mammotion's claims for declaratory relief arise directly from FutureGen's conduct within this forum, and the exercise of personal jurisdiction over FutureGen in this District comports with traditional notions of fair play and substantial justice under the Due Process Clause.

14.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because this is the district in which a substantial part of the events and allegations giving rise to the claims occurred. *See supra* ¶ 10.

## ASSERTED FUTUREGEN PATENTS

15.    On November 26, 2019, the United States Patent Office issued U.S. Patent No. 10,485,164, titled "System and method for controlling and monitoring operation of an autonomous robot." The '164 Patent identifies Michael Todd Letsky as the inventor. A true and correct copy of the '164 Patent is attached hereto as Exhibit 5.

16.    The '164 Patent is directed to mobile robots designed to perform grass-cutting tasks within a defined area of confinement. The claimed invention of the '164 Patent is specifically limited to (1) detecting the thickness of grass by comparing a current value received from a current sensor to a threshold value, and (2) controlling the robot's movement—namely, adjusting its velocity and executing directional changes—solely based on the determination of the robot's position relative to the boundary of the confinement area. The scope of the claimed invention does not extend beyond these parameters. It is expressly confined to these specific modes of control based on boundary proximity and current-based grass-thickness detection, as defined in the '164 Patent.

17.    On April 22, 2014, the United States Patent Office issued U.S. Patent No. 8,706,297, titled "Method for establishing a desired area of confinement for an autonomous

robot and autonomous robot implementing a control system for executing the same." The '297 Patent identifies Michael Todd Letsky as the inventor. A true and correct copy of the '297 Patent is attached hereto as Exhibit 6.

18.     The '297 Patent is directed to autonomous robots capable of defining a virtual perimeter for a confinement area through location tracking and perimeter mapping. The claimed invention of the '297 Patent is specifically limited to: (1) defining a closed-geometry perimeter comprising a first location point and a plurality of discrete additional location points recorded during the robot's movement, where the perimeter is only established upon one of the additional points being determined to be substantially coincident with the first point; and (2) automatically storing that perimeter within a memory device as map data. To overcome prior art, the '297 Patent expressly requires that the closed-geometry be automatically defined by the central processing unit without user intervention. Additionally, certain claims, including claim 18, are limited to systems incorporating a capacitive proximity sensor operably coupled to a conductive portion of the housing, whereby the robot must deactivate upon detecting an increase in capacitance above a baseline value. The scope of the claimed invention does not extend beyond these parameters and is expressly confined to the specific control logic and sensor architecture disclosed in the '297 Patent.

19.     On April 23, 2013, the United States Patent Office issued U.S. Patent No. 8,428,776, titled "Method for establishing a desired area of confinement for an autonomous robot and autonomous robot implementing a control system for executing the same." The '776 Patent identifies Michael Todd Letsky as the inventor. A true and correct copy of the '776 Patent is attached hereto as Exhibit 7.

20.     The '776 Patent is directed to autonomous robots capable of defining a virtual area of confinement without reliance on physical barriers. The claimed invention of the '776 Patent is specifically limited to: (1) recording a starting point $P_0$ as a reference coordinate—

such as (0,0) in a Cartesian or polar coordinate system—within the robot's memory device prior to the mapping process, and (2) tracking the robot's relative location using a distance-traveled measuring mechanism and a directional indicating instrument as the robot is manually guided along the intended perimeter. The mapping and perimeter definition are thus strictly dependent on relative motion calculations from the original starting point, rather than on any external positioning system. The scope of the claimed invention does not extend beyond these parameters. It is expressly confined to defining the area of confinement using internally tracked distance and directional data anchored to a single, robot-determined starting reference.

## BACKGROUND

21.    Mammotion, founded in 2016, is a leading global provider of intelligent outdoor robotic solutions. The company focuses on the independent development, design, and manufacture of innovative yard robots, such as boundary-free lawn mowers and pool cleaning robots, under the "Mammotion" brand, integrating advanced robotics technologies. Mammotion's operations are limited to product research and development, engineering, and manufacturing. Mammotion does not engage in the sale, distribution, or marketing of its products outside of China.

22.    All sales of Mammotion-branded products in the United States are conducted exclusively by Mammotion Technology LLC ("Mammotion US"), a separate legal entity with its principal place of business located at 13640 Redwood Ct, Chino, California 91710. Mammotion US purchases products manufactured by Mammotion outside of the United States, and is solely responsible for the importation, distribution, marketing, sale, and post-sale customer service of Mammotion-branded products in the U.S. market.

23.    The "Mammotion" store on Amazon marketplace, through which Mammotion-branded products are sold in the U.S. market, is registered under the name of Mammotion US and is exclusively controlled and operated by Mammotion US.

24.    On April 25, 2025, Mammotion US received an email notice from Amazon.com stating that FutureGen had submitted an Amazon complaint alleging that the Mammotion Accused Products infringe the '164 Patent, the '297 Patent, and the '776 Patent. *See* Exhibit 1. The notice directed Mammotion US to resolve the dispute promptly, warning that "[f]ailure to do so may result in removal of your offers or your Amazon.com selling privileges." *See id.*

25.    To resolve the dispute, Mammotion promptly contacted Michael Letsky, FutureGen's CEO, to discuss a potential business resolution regarding the alleged patent infringement. On April 30, 2025, Michael Letsky, in response, requested execution of a Non-Disclosure Agreement and provided a claim chart outlining the alleged infringement (the "Claim Chart"). *See* Exhibit 8.

26.    On May 23, 2025, Mammotion and FutureGen executed a Non-Disclosure Agreement through FutureGen's attorneys at the Washington, D.C. office of Ropes & Gray LLP. Following the execution, Mammotion requested that FutureGen retract its Amazon complaint submitted to Amazon.com against the Mammotion Accused Products, pending further clarification regarding the alleged infringement. Mammotion expressly noted that, in the absence of a formal finding of patent infringement, the continued pendency of the Amazon complaint risked delisting of the Mammotion Accused Products from the Amazon platform, thereby causing significant commercial and reputational harm. FutureGen refused to withdraw the complaint and instead indicated that it would consider such action only in the context of a broader, mutually-acceptable commercial resolution.

27.    On June 2, 2025, Mammotion transmitted a legal memorandum titled "Response to Alleged Infringement of U.S. Patent Nos. 10,485,164; 8,706,297; and 8,428,776" to the Washington, D.C. office of Ropes & Gray LLP. The memorandum detailed Mammotion's legal position regarding non-infringement of the Asserted FutureGen Patents and was submitted as part of the parties' ongoing dialogue concerning a potential commercial resolution.

The submission also addressed the possibility of resolving the dispute through a covenant not to sue or similar amicable means.

28.    On June 6, 2025, FutureGen, through its counsel, proposed that Mammotion obtain a license and/or covenant not to sue in exchange for monetary consideration. In connection with its assessment of the alleged infringement, FutureGen also agreed to accept Mammotion's offer to voluntarily provide a physical sample of a YUKA 2000—one of the Mammotion Accused Products—for delivery to FutureGen's counsel at Ropes & Gray's Washington, D.C. office. The stated purpose of this delivery was to facilitate FutureGen's examination of the product for the limited purposes of evaluating the applicability of the Asserted FutureGen Patents and the potential merits of its infringement allegations.

29.    In light of the substantial disagreement between Mammotion and FutureGen regarding both the merits of the alleged patent infringement and the appropriate terms for any potential license, Mammotion remains under ongoing threat due to the unresolved infringement report filed by FutureGen with Amazon.com. That Amazon complaint, which remains active, poses a continuing risk of delisting Mammotion Accused Products from the Amazon marketplace at any time. The persistence of this unresolved dispute has also created significant uncertainty concerning Mammotion's ability to continue designing and manufacturing its existing product models and has introduced the potential for disruption to the transactional relationship between Mammotion and Mammotion US. Given the imminent threat to its business operations, commercial relationships, and lawful use of its technology, Mammotion is compelled to seek declaratory relief to resolve the actual and justiciable controversy between the parties and to eliminate the cloud of legal uncertainty imposed by FutureGen's assertions.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '164 Patent)

30.    Mammotion restates and incorporates by reference the allegations in paragraphs

1 through 29 of this Complaint as if fully set forth herein.

31.    FutureGen claims to own all right, title, and interest in and under the '164 Patent. *See* Exhibit 9.

32.    As described previously, FutureGen alleges that the Mammotion Accused Products and the manufacture, sale, offer for sale, use, and/or importation into the United States of the Mammotion Accused Products infringed the '164 Patent.

33.    For example, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 1 of the '164 Patent, reproduced below, as representative:

1. A system for monitoring operation of an autonomous robot comprising:

a server;

an external device having a display and a transceiver for receiving data from the server;

an autonomous robot comprising a housing, a control system comprising a location tracking unit, a transceiver for transmitting signals to the server, and a central processing unit;

the central processing unit configured to transmit, via the transceiver of the autonomous robot, data indicative of a location of the autonomous robot within an area of confinement to the server based on output generated by the location tracking unit, wherein the data is transmitted while the autonomous robot is performing a task within the area of confinement;

the server configured to transmit the data indicative of the location of the autonomous robot within the area of confinement to the external device;

wherein upon receipt of the data indicative of the location of the autonomous robot within the area of confinement by the external device, a visual representation of a status of a work session of the autonomous robot at a point in time T1 and a graphical representation of the boundary and a portion of an area within the boundary in which an activity has been performed by the autonomous robot during a work session is displayed on the display of the external device; and

wherein the task is cutting grass and wherein the central processing unit is configured to detect, via a current sensor, a thickness of the grass by comparing a current value received by the current sensor to a threshold current value.

34. The Mammotion Accused Products do not directly or indirectly infringe claim 1 of the '164 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but are not limited to, the following:

- The Mammotion Accused Products do not comprise "a central processing unit [] configured to detect, via a current sensor, a thickness of the grass," as required by the claim element. While current sensors are present as part of the internal motor protection systems, these sensors are configured solely to detect electrical overload conditions. They are not designed or programmed to measure or detect grass thickness.

35. Additionally, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 8 of the '164 Patent, reproduced below, as representative:

8. A system for monitoring operation of an autonomous robot comprising:

a server;

an external device having a display and a transceiver for receiving data from the server;

an autonomous robot comprising a housing, a control system comprising a location tracking unit, a transceiver for transmitting signals to the server, and a central processing unit;

the central processing unit configured to transmit, via the transceiver of the autonomous robot, data indicative of a location of the autonomous robot within an area of confinement to the server based on output generated by the location tracking unit, wherein the data is transmitted while the autonomous robot is performing a task within the area of confinement;

the server configured to transmit the data indicative of the location of the autonomous robot within the area of confinement to the external device;

wherein upon receipt of the data indicative of the location of the autonomous robot within the area of confinement by the external device, a visual representation of a status of a work session of the autonomous robot at a point in time T1 and a graphical

representation of the boundary and a portion of an area within the boundary in which an activity has been performed by the autonomous robot during a work session is displayed on the display of the external device the central processing unit is further configured to:

> determine a distance between a position of the autonomous robot within the confinement area and a boundary of the confinement area;

> move the autonomous robot at a first velocity when the distance is greater than a threshold amount; and

> reduce the first velocity to a second velocity when the distance is less than the threshold amount.

36.    The Mammotion Accused Products do not directly or indirectly infringe claim 8 of the '164 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but are not limited to, the following:

- The Mammotion Accused Products do not perform any measurable distance function as required by the claim element "determine a distance between a position of the autonomous robot within the confinement area and a boundary of the confinement area." In the Mammotion Accused Products, turning or deceleration behavior is not governed by any real-time measurement of the robot's distance to the perimeter of the confinement area.

37.    In view of the foregoing, Mammotion seeks and is entitled to declaratory judgment that the manufacture, sale, offer for sale, use and/or importation of the Mammotion Accused Products do not infringe and have not infringed, directly or indirectly, any claim of the '164 Patent, either literally or under the doctrine of equivalents. A judicial determination of the respective rights of the parties with respect to non-infringement of the claims of the '164 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the dispute regarding alleged infringement of the '164 Patent.

38.     Mammotion reserves the right to assert additional non-infringement grounds, as well as any defenses relevant to FutureGen's infringement allegations which may become known as the case progresses.

<u>SECOND CAUSE OF ACTION</u>
**(Declaratory Judgment of Non-Infringement of the '297 Patent)**

39.     Mammotion restates and incorporates by reference the allegations in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     FutureGen claims to own the right, title, and interest in and under the '297 Patent. *See* Exhibit 10.

41.     As described previously, FutureGen alleges that the Mammotion Accused Products and the manufacture, sale, offer for sale, use, and/or importation into the United States of the Mammotion Accused Products infringed the '297 Patent.

42.     For example, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 1 of the '297 Patent, reproduced below, as representative:

1. A method of defining an area of confinement for an autonomous robot comprising:

a) positioning the autonomous robot at a first location point $P_1$, the autonomous robot comprising a location tracking unit, and recording the first location point $P_1$ within a memory device;

b) moving the autonomous robot from the first location point $P_1$ to a plurality of location points $P_{2-N}$ and recording each of the plurality of location points $P_{2-N}$ within the memory device; and

c) defining, with a central processing unit, a first closed-geometry comprising the first location point $P_1$ and the plurality of location points $P_{2-N}$ as a perimeter of the area of confinement within the memory device;

wherein the central processing unit automatically performs step c) upon one of the plurality of location points $P_{2-N}$ being determined to be substantially coincident With the first location point $P_1$; and

wherein the perimeter of the area of confinement is defined in the memory device as map data, and further comprising automatically transmitting the map data to a server

upon the first closed-geometry being defined.

43.    The Mammotion Accused Products do not directly or indirectly infringe claim 1 of the '297 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but are not limited to, the following:

- The Mammotion Accused Products lack the claim element, which requires that "the perimeter of the area of confinement is defined in the memory device as map data and further comprising automatically transmitting the map data to a server upon the first closed-geometry being defined." In the Mammotion Accused Products, the memory device does not automatically transmit the map data to a server once the confinement area is defined.

44.    Additionally, in the Claim Chart sent directly via email by Micheal Letsky, FutureGen identified claim 13 of the '297 Patent, reproduced below, as representative:

13. An autonomous robot comprising:

a housing, a control system, and a plurality of drive wheels, the control system comprising a location tracking unit, a memory device, a data receiving port for receiving signals from an external device, and a central processing unit; and

the central processing unit configured to: (1) track location of the autonomous robot based on output generated by the location tracking unit during movement of the autonomous robot; (2) record a first location point of the autonomous robot within the memory device; (3) automatically record a plurality of additional discrete location points of the autonomous robot within the memory device while the autonomous robot maneuvers along a perimeter of an area of confinement; and (4) define a closed-geometry comprising the first location point and the plurality of additional discrete location points as the perimeter of the area of confinement within the memory device, wherein the closed geometry is automatically defined by the central processing unit upon one of the plurality of additional discrete location points being determined to be substantially coincident with the first location point.

45.    The Mammotion Accused Products did not infringe claim 13 of the '297 Patent,

or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but are not limited to, the following:

- The Mammotion Accused Products do not satisfy the limitation set forth in claim element, which requires that "the closed geometry is automatically defined by the central processing unit upon one of the plurality of additional discrete location points being determined to be substantially coincident with the first location point." The Mammotion Accused Products do not automatically define a closed geometry or confinement area based on positional coincidence. Instead, after the user completes outlining the area of confinement, the user interface generates a manual confirmation prompt requesting the user to confirm whether to save and define the area affirmatively. The system does not proceed to define or store the perimeter geometry unless the user provides manual confirmation.

46.    Furthermore, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 18 of the '297 Patent, reproduced below, as representative:

18. An autonomous robot comprising:

a housing and a control system, control system comprising a memory device in operable connection with a central processing unit;

a capacitive proximity sensor operably coupled to the central processing unit and to the housing, the memory device storing a baseline capacitance value of the capacitive proximity sensor;

wherein at least a portion of the housing is operably coupled to the capacitive proximity sensor, the portion of the housing comprising an electrically conductive material;

wherein upon an object having a capacitance value being detected in a surrounding area of the autonomous robot while the autonomous robot is activated, the capacitive proximity sensor detects an increase in capacitance value relative to the baseline

capacitance value and transmits an increased capacitance value signal to the central processing unit; and

wherein upon receiving the increased capacitance value signal from the capacitive proximity sensor, the central processing unit deactivates the autonomous robot.

47.    The Mammotion Accused Products do not directly or indirectly infringe claim 18 of the '297 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but not limited to, the following:

- The Mammotion Accused Products do not satisfy the claim element, which requires "a capacitive proximity sensor operably coupled to the central processing unit and to the housing, [with] the memory device storing a baseline capacitance value of the capacitive proximity sensor." The Mammotion Accused Products do not incorporate a capacitive proximity sensor, nor are they configured to detect changes in capacitance or to store any baseline capacitance values in a memory device.

48.    In view of the foregoing, Mammotion seeks and is entitled to declaratory judgment that the manufacture, sale, offer for sale, use, and/or importation of the Mammotion Accused Products do not infringe and have not infringed, directly or indirectly, any claim of the '297 Patent, either literally or under the doctrine of equivalents. A judicial determination of the respective rights of the parties with respect to non-infringement of the claims of the '297 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the dispute regarding alleged infringement of the '297 Patent.

49.    Mammotion reserves the right to assert additional non-infringement grounds, as well as any defenses relevant to FutureGen's infringement allegations which may become known as the case progresses.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment of Non-Infringement of the '776 Patent)**

50.    Mammotion incorporates paragraphs 1 through 49 of this Complaint as if set forth fully herein.

51.    FutureGen claims to own the right, title, and interest in and under the '776 Patent. *See* Exhibit 11.

52.    As described previously, FutureGen alleges that the Mammotion Accused Products and the manufacture, sale, offer for sale, use, and/or importation into the United States of the Mammotion Accused Products infringed the '776 Patent.

53.    For example, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 1 of the '776 Patent, reproduced below, as representative:

1. A method of defining an area of confinement for an autonomous robot comprising;

a) positioning the autonomous robot at a starting point $P_0$ and recording the starting point $P_0$ as a reference point within a memory device of the autonomous robot;

b) moving the autonomous robot from the starting point $P_0$ about a perimeter of the area of confinement in a desired direction, wherein said movement of the autonomous robot is controlled by a user;

c) continuously tracking location of the autonomous robot relative to the reference point $P_0$ during said movement using a distance-traveled measuring mechanism and a directional indicating instrument:

d) recording the tracked location of the autonomous robot as a map in the memory device; and

e) upon detecting that the map includes a dosed-geometry, defining the closed-geometry as the perimeter of the area of confinement within the memory device;

wherein the area of confinement, is defined without marking the perimeter of the area of confinement with a physical barrier.

54.    The Mammotion Accused Products do not directly or indirectly infringe claim 1 of the '776 Patent, or the claims that depend on it, because the Mammotion Accused Products

do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but not limited to, the following:

- The Mammotion Accused Products do not satisfy the location tracking limitation recited in claim 1 of the '776 Patent, which expressly requires that the autonomous robot be positioned at a starting point $P_0$ and that this starting point be recorded as a reference point within the memory device of the robot. The claim further requires that the robot's subsequent movement be continuously tracked relative to this reference point $P_0$. The specification of the '776 Patent confirms this structure, explaining that "starting point $P_0$ may be recorded by the robot control system as the Cartesian coordinate $(0, 0)$, which will then become the relative reference point upon which all subsequent locations are based." *See* Exhibit 7 at p. 48, 5:3-7. In contrast, the Mammotion Accused Products do not use the robot's initial position as the reference point for tracking. Instead, they rely on Real-Time Kinematic (RTK) positioning, in which the RTK base station functions as a fixed external reference point, and the robot's position is calculated in real time relative to the RTK base station rather than to the robot's own starting position.

55.    Additionally, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 10 of the '776 Patent, reproduced below, as representative:

10. An autonomous robot comprising:

a housing, a control system, and a plurality of drive wheels, the control system comprising a distance-traveled measuring mechanism, a directional indicating instrument, a memory device, a data receiving port for receiving signals from an external device, and a central processing unit; and

the central processing unit configured to (1) track the location of the autonomous robot relative to a reference point based on output generated by the distance-traveled measuring mechanism and the directional indicating instrument during user-controlled movement of the autonomous robot around a perimeter of an area of confinement using the external device, wherein the perimeter of the area of confinement is not marked by

a physical barrier; (2) record the tracked location of the autonomous robot as a map within the memory device; and (3) define a closed-geometry formed by the tracked location as the perimeter of the area of confinement within the memory device.

56.    The Mammotion Accused Products do not directly or indirectly infringe claim 10 of the '776 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but not limited to, the following:

- The Mammotion Accused Products do not meet the limitations of claim element, which expressly requires "track[ing] the location of the autonomous robot relative to a reference point based on output generated by the distance-traveled measuring mechanism and the directional indicating instrument." The Mammotion Accused Products do not use any "reference point" recorded at the robot itself; instead, they rely on Real-Time Kinematic (RTK) positioning, which determines the robot's location relative to an external RTK base station. Moreover, the accused products do not employ a "distance-traveled measuring mechanism" to calculate position; rather, they receive continuous coordinate data wirelessly via the RTK system.

57.    Furthermore, in the Claim Chart sent directly via email by Michael Letsky, FutureGen identified claim 20 of the '776 Patent, reproduced below, as representative:

20. A method of defining an area of confinement for an autonomous robot comprising;

a) positioning the autonomous robot at a starting point $P_0$ and recording the starting point $P_0$ as a reference point within a memory device of the autonomous robot, wherein the starting point $P_0$ is recorded upon the autonomous robot receiving a record. starting point signal from an eternal device;

b) moving the autonomous robot from the starting point $P_0$ about a perimeter of the area of confinement in a desired direction, wherein said movement of the autonomous robot is controlled by a user transmitting signals from the external device which enables the user to move and steer the autonomous robot in a desired direction;

c) continuously tracking location of the autonomous robot relative to the reference point P0 during said movement;

d) recording the tracked location of the autonomous robot as a map in the memory device; and

e) upon detecting that the map includes a closed-geometry, defining the closed-geometry as the perimeter of the area of confinement within the memory device.

58.    The Mammotion Accused Products do not directly or indirectly infringe claim 20 of the '776 Patent, or the claims that depend on it, because the Mammotion Accused Products do not have all of the claimed elements, either literally or under the doctrine of equivalents. Representative claim elements missing from the Mammotion Accused Products include, but are not limited to, the following:

- The Mammotion Accused Products do not satisfy the limitations of claim elements **20.a)** and **20.c)**, which require that the autonomous robot be "position[ed] at a starting point $P_0$ and record[] the starting point $P_0$ as a reference point within a memory device of the autonomous robot," and further mandate that the robot's location be "continuously track[ed]… relative to the reference point $P_0$" during user-controlled movement. Instead, the Mammotion Accused Products do not record a starting point as a reference within the robot's memory, nor do they perform location tracking relative to such a point. Instead, they rely on RTK positioning, which calculates the robot's location in real-time based on its distance from an external RTK base station, rather than from the robot's starting point $P_0$.

59.    In view of the foregoing, Mammotion seeks and is entitled to declaratory judgment that the manufacture, sale, offer for sale, use, and/or importation of the Mammotion Accused Products do not infringe and have not infringed, directly or indirectly, any claim of the '776 Patent, either literally or under the doctrine of equivalents. A judicial determination of the respective rights of the parties with respect to non-infringement of the claims of the '776 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the dispute regarding

alleged infringement of the '776 Patent.

60.     Mammotion reserves the right to assert additional non-infringement grounds, as well as any defenses relevant to FutureGen's infringement allegations which may become known as the case progresses.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Business Relationship and Expectancies)

61.     Mammotion incorporates paragraphs 1 through 60 of this Complaint as if set forth fully herein.

62.     Mammotion has valid and ongoing business relationships and prospective economic advantages with Mammotion US and with online retailers, including Amazon.com. These relationships include the manufacture and distribution of Mammotion Accused Products in the United States, including the YUKA and LUBA series of autonomous robotic lawn mowers.

63.     FutureGen, through its CEO Michael Letsky and its counsel at Ropes & Gray LLP, had full knowledge of the critical importance of Amazon.com as a sales platform for Mammotion Accused Products in the United States. Specifically, FutureGen understood that the mere existence of an unresolved patent infringement report on Amazon.com could, without any formal adjudication or finding of infringement, result in the removal of Mammotion Accused Products from the Amazon marketplace and thereby cause immediate and irreparable harm to Mammotion's commercial operations and reputation.

64.     Despite this knowledge, and while actively engaged in discussions with Mammotion under the protections of a Non-Disclosure Agreement executed on May 23, 2025, FutureGen willfully refused to withdraw or temporarily suspend its infringement report submitted to Amazon.com. Instead, FutureGen conditioned any withdrawal on Mammotion's agreement to a commercial settlement, including the payment of a license fee or covenant not

to sue. This conduct was undertaken in bad faith, with the intent and effect of leveraging Amazon's enforcement mechanisms to coerce Mammotion into a settlement under threat of delisting and business disruption, rather than on the legal merits of the asserted claims.

65.    Furthermore, the Claim Chart submitted by FutureGen and attached as Exhibit 8—which was prepared and transmitted by Michael Letsky via email on April 30, 2025—contains numerous screenshots taken directly from Mammotion's own instructional videos, which are designed to demonstrate proper operation of the products. These illustrative materials do not provide a legitimate evidentiary basis to establish infringement of the '164, '297, or '776 Patents. *See Digital Reg of Texas, LLC v. Adobe Systems Inc.*, 2013 WL 3361241, *4 (N.D. Cal. Jul. 3, 2013) (infringement contentions that "parrot" claim language and "incorporate [ ] screen slots in lieu of explanatory text" are improper because they leave defendants "to guess what particular system (or aspect of a particular system) [the patentee] is accusing of meeting each limitation."). FutureGen nonetheless persisted in asserting infringement on the basis of these materials, even after consultation with legal counsel at Ropes & Gray LLP's Washington, D.C. office, and despite being made aware by Mammotion that the legal and factual bases for such claims were unfounded.

66.    FutureGen's conduct—specifically, the submission and continued maintenance of an unfounded infringement report with Amazon.com, combined with its refusal to withdraw such report during negotiations under an NDA—was intentional, unjustified, and done with the purpose of interfering with Mammotion's business relationships and expectancies.

67.    As a direct and proximate result of FutureGen's tortious interference, Mammotion has suffered, and continues to suffer, substantial harm, including potential disruption to its supply chain and distribution relationships, diminished goodwill, lost sales and business opportunities, and exposure to reputational injury, all of which are compensable in damages to be proven at trial.

68.     Mammotion is entitled to recover actual and consequential damages caused by FutureGen's tortious conduct, as well as any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '297 Patent)

69.     Mammotion incorporates paragraphs 1 through 68 of this Complaint as if set forth fully herein.

70.     Claims 1-17 of the '297 Patent are invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq*., including but not limited to 35 U.S.C. §§ 102, 103, and 112, and non-statutory common law doctrines.

71.     Without limiting the grounds of invalidity that will be asserted in this action, at least claims 1 and 13 of the '297 Patent are invalid under 35 U.S.C. § 101. For example, receiving, comparing, and transmitting information is the fundamental idea of claims 1 and 13, which falls into a familiar class of claims directed to a patent-ineligible concept. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (Federal Circuit "ha[s] treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); se*e also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("An abstract idea on an internet computer network or on a generic computer is still an abstract idea."(quotations and citation omitted). The prosecution history of the '297 Patent indicates that the asserted point of novelty for these claims lies in the fact that the robot has a way of "automatically determining, without human interjection, that it is at a vertex that is substantially coincident with the first vertex that was defined." *See* Exhibit 12, at p. 10. However, the patent fails to "focus on [any] specific means or method that improves the relevant technology[.]" *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017).

The patent further fails to disclose any technical details or algorithmic methodology for achieving this automation, instead merely stating that "the CPU... automatically recognizes that a closed-geometry has been formed (through proper programming)..." *See* Exhibit 6, 12:32-33. The Federal Circuit has repeatedly held that claims like these are invalid under § 101. *See, e.g., Alstom S.A.*, 830 F.3d at 1356 (claims "defining a desirable information-based result and not [being] limited to inventive means of achieving the result" are ineligible under §101).

72.     Without limiting the grounds of invalidity that will be asserted in this action, at least claims 1 and 13 of the '297 Patent are invalid under 35 U.S.C. § 112. For example, claim 1 and claim 13 require that a closed geometry is "automatically defined" by the central processing unit. *See* Exhibit 6, 35:3–6 and 36:63–67. However, neither the specification nor the claims provides any description of how such automation is achieved. In particular, the patent fails to disclose or explain how the starting point $P_1$ is automatically connected to point $P_N$ to form a closed geometry without human intervention. The absence of any supporting technical detail renders the claims indefinite and non-enabled under § 112.

73.     Therefore, the '297 Patent is unpatentable and invalid because it is indefinite, lacks an adequate written description, and/or lacks enablement.

74.     By way of further example and without limiting the grounds of invalidity that will be asserted in this action, at least claims 1 and 13 of the '297 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on previously available products, patents, and publications. For example, Japan Patent No. 3,557,176 (the "JP176 Patent"), which was filed on February 14, 2001, and the Japan Patent No. 2008,077,670 (the "JP670 Patent"), which was filed on October 9, 2007, either alone or in combination, render at least claim 1 and claim 13 of the '297 Patent invalid as anticipated or obvious. A true and correct copy of the JP176 Patent is attached as Exhibit 13. A true and correct copy of the JP670 Patent is attached as Exhibit 14.

75.     The JP176 Patent discloses an autonomous traveling robot that autonomously

navigates within a predetermined travel area. *See* Exhibit 13, at p. 12, FIG 18. As the robot

operates, it records discrete points along its travel path. When a closed geometry is detected—

specifically, when the distance between a newly detected endpoint and a previously recorded

starting point falls within a defined threshold—a closed loop is deemed to have been formed,

upon detecting such a closed loop, the system registers the coordinate data of the loop in a

database, representing the confinement area. This coordinate data is then utilized to control the

robot's subsequent autonomous navigation within the designated safety area. *See id.*, at pp. 6–

7, ¶¶ [0028]–[0029].

【図１８】



76.     The JP670 Patent also discloses an autonomous traveling robot configured to

navigate within a predetermined traveling area. During the initial exploration process, the robot

travels along the boundary of the area and accumulates the path it follows. The robot determines

that it has returned to the starting point on the boundary after detecting a sufficient overlap

distance. *See id.*, at p. 9, ¶ [0035]. When the robot completes its traversal and the route matching

process confirms that it has returned to a known position, the robot updates the navigation

system's map to reflect its current location. *See id.*, at p. 10, ¶ [0049]. Once the coordinate data

on the map has been updated, the robot relies on this revised map for subsequent autonomous

navigation within the region. *See id.*

77.    A person of ordinary skill in the art would find each and every element of claim 1 and claim 13 of the '297 Patent expressly or inherently disclosed in the JP176 Patent and/or the JP670 Patent. A person of ordinary skill in the art would have been motivated to combine or consult these references, as both pertain to the same field of technology and provide complementary teachings on how to configure an autonomous traveling robot to navigate within a confined area.

78.    Mammotion seeks, and is entitled to, a declaratory judgment that each claim of the '297 Patent is invalid.

79.    Mammotion reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery and after the Court has construed the claims.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '776 Patent)

80.    Mammotion incorporates paragraphs 1 through 79 of this Complaint as if set forth fully herein.

81.    Claims 1-20 of the '776 Patent are invalid because the purported inventions therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and 112, and non-statutory common law doctrines.

82.    By way of further example and without limiting the grounds of invalidity that will be asserted in this action, at least claims 1, 10, and 20 of the '776 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on previously available products, patents, and publications. For example, the JP176 Patent attached as Exhibit 13 and the JP670 Patent attached as Exhibit 14, either alone or in combination, render at least claims 1, 10, and 20 of the '776 Patent invalid as anticipated or obvious.

83.     The JP176 Patent discloses an autonomous traveling robot designed to navigate within a predetermined traveling area without relying on the detection of physical barriers or boundaries. Instead, the mapping process is based entirely on the robot's path of traversal. As the robot operates, it records discrete points along its route. A closed geometry is automatically recognized and formed when the distance between a newly detected endpoint and a previously recorded starting point (e.g., point $P_0$) falls within a predefined threshold. *See* Exhibit 13, at pp. 6–7, ¶¶ [0028]–[0029]. The coordinate data of the closed loop is then registered in a database as defining the edge of the area to be navigated, and this data is subsequently used to guide the robot's autonomous operation within the designated safety zone. *See id*.

84.     The JP670 Patent discloses an autonomous traveling robot configured to navigate within a predetermined travel area by determining that it has returned to its starting point (e.g., point $P_0$) when an overlap is detected between the current endpoint and the initial position. This overlap detection serves as the basis for recognizing a closed-loop boundary. *See* Exhibit 14, at p. 9, ¶ [0035]. Once the robot completes its traversal and the route-matching process confirms that it has returned to a known location, the robot updates the navigation system's internal map to reflect the defined area. *See id.*, at p. 10, ¶ [0049]. The robot then relies on this updated map to perform subsequent autonomous navigation within the confined region. *See id*.

85.     A person of ordinary skill in the art would find each and every element of claim 1, claim 10, and claim 20 of the '776 Patent expressly or inherently disclosed in the JP176 Patent and/or the JP670 Patent. A person of ordinary skill in the art would have been motivated to combine or consult these references, as both pertain to the same field of technology and provide complementary teachings on how to configure an autonomous traveling robot to navigate within a confined area.

86.     Mammotion seeks, and is entitled to, a declaratory judgment that each claim of

the '776 Patent is invalid.

87.    Mammotion reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery and the Court has construed the claims.

## RESERVATION OF RIGHTS

88.    Mammotion hereby reserves its rights to supplement with additional claims or defenses as discovery proceeds in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Mammotion prays for judgment as follows:

A.    Declaring that the Mammotion Accused Products do not infringe and have not infringed, directly or indirectly, any claim of the FutureGen's Asserted Patents, either literally or under the doctrine of equivalents;

B.    Declaring each claim of the '297 Patent and the '776 Patent invalid;

C.    Preliminary and permanent injunctive relief restraining FutureGen and its agents, servants, employees, successors, and assignees, and all others in concert and privity with them from wrongfully asserting the Asserted FutureGen Patents against the Mammotion Accused Products;

D.    With respect to the Fourth Cause of Action, an award to Mammotion of their actual damages in excess of $75,000, the exact nature and amount of which will be established at trial;

E.    With respect to the Fourth Cause of Action, an award to Mammotion of punitive damages as may be permitted by law or in the discretion of the Court;

F.    Declaring that this action is an exceptional case under 35 U.S.C. § 285 and awarding Mammotion its costs and attorney fees; and

G.    Granting Mammotion such further and additional relief as the Court deems just and equitable.

DATED: June 20, 2025                    Respectfully submitted,

                                        /s/ *Peter J. Curtin*
                                        Peter J. Curtin (D.C. Bar No. 430529)
                                        **ARCH & LAKE LLP**
                                        203 N LaSalle Street, Suite 2100
                                        Chicago, IL 60601
                                        Telephone: 312-558-1369
                                        Email: pete_curtin@archlakelaw.com

                                        Tianqin Zhao (D.C. Bar No. 90027862)
                                        **YOUNGZEAL LLP**
                                        9355 John W Elliott Dr, STE 25555,
                                        Frisco, Texas 75033
                                        Telephone: 585-748-3732
                                        Email: zhao@yzlaw.com
                                        *Pro Hac Vice forthcoming*

                                        Fan Liang (CA Bar No. 303031)
                                        Email: alex_liang@anjielaw.com
                                        *Pro Hac Vice forthcoming*
                                        Zhiyu Liang (CA Bar No. 357770)
                                        Email: liangzhiyu@anjielaw.com
                                        *Pro Hac Vice forthcoming*
                                        **ANJIE BROAD LAW FIRM**
                                        No.19 Dongfangdonglu Chaoyang
                                        19/F Twr D1 Diplomacy Ofc. Bldg.
                                        Beijing 100600, China

                                        *Attorneys for Plaintiff Shenzhen
                                        Mammotion Innovation Co., Ltd.*